NOT DESIGNATED FOR PUBLICATION

No. 128,922

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JAMAAL J. BYNUM,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; CHRISTOPHER MAGANA, judge. Submitted without oral argument. Opinion filed July 24, 2026. Affirmed.

*Merideth J. Hogan*, of Kansas Appellate Defender Office, for appellant.

*Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before HILL, P.J., ARNOLD-BURGER, J., and ANDREA PURVIS, District Judge, assigned.

PER CURIAM: Jamaal J. Bynum pled guilty to aggravated assault and criminal possession of a weapon. The State sought a restitution order of $13,979.12. But Bynum argued the amount was unworkable because he was in jail for two years and had low earning potential upon his release. Because we find the district court did not abuse its discretion in imposing the full amount of restitution requested, we affirm.

1

The State charged Bynum with aggravated battery, aggravated assault, battery, criminal possession of a weapon, and possession of marijuana for conduct occurring on August 14, 2022. Bynum pled guilty to aggravated assault and criminal possession of a weapon, and the State dismissed the remaining charges.

In regards to restitution, the plea agreement provided: "[Bynum] agrees to pay restitution for all counts, including those dismissed as part of this plea, currently in the amount of $13,979.12, payable to the Crime Victims Compensation Board. [Bynum] will argue unworkability, which the State will oppose."

At the plea hearing, Bynum raised concerns about the restitution and questioned why he should have to pay anything when the relevant charge was dismissed. The State explained that the plea agreement included restitution for the dismissed charges.

In July 2024, Bynum moved to withdraw his plea. He listed the following reasons:

"a. Mr. Bynum believed that an immunity defense was valid, and asked Counsel to pursue it. Counsel did not do so;

"b. The failure to explore this defense exposes Mr. Bynum to jeopardy for actions which may have constituted a valid self-defense strategy in one form or another;

"c. The failure to prepare a viable defense left Mr. Bynum to believe he had no other choice but to accept the plea offered, which contains an agreement to an upward departure to prison."

He did not express any dissatisfaction with the restitution order.

The district court held an evidentiary hearing on the motion to withdraw the plea. Bynum did complain about the restitution order at the hearing. He testified that his

2

understanding was that the restitution would be amended or altered so that he would not have to pay anything. He also explained that he did not know what unworkability meant and agreed that the primary reason for filing the motion to withdraw was because he did not want to pay restitution. The district court took the matter under advisement and later denied the motion to withdraw the plea. The district court commented that the matter demonstrated classic buyer's remorse because Bynum's focus was to remove any possibility of restitution.

At sentencing, the court again took up the restitution matter. Bynum testified that at the time he was arrested in this case, he did not have a job. Bynum stated that he had surgery in 2017 for his carpel tunnel and explained it flares up when he uses his arm too much, resulting in extreme pain. Bynum testified that he applied for social security disability twice, once in 2021 and again in 2022. He explained that after his first application, the social security administration instructed him to apply again, but as a result of his incarceration, he had not received a response for the second claim. Bynum explained that further surgeries would not alleviate his pain or limitations, which was why he sought social security disability.

Bynum testified that at 41 years old, he has never been employed at a job that pays with a paycheck. Bynum stated that he takes on "odd jobs" due to the injury to his left arm that limits his ability to work. Bynum said he performed flooring work, like laying carpet, and borrowed a friend's mower to mow lawns. He had also helped his aunt in her cleaning business, for which he reportedly earned about $200 each time, roughly three times a month. Bynum also stated he had "sold a little bit of weed here and there." Bynum shared that he recently obtained his high school diploma while he was incarcerated.

Although he did not provide verification of a child support order, Bynum stated that he had three minor children and pays $230 a month in support for each child. Bynum

stated that before he was arrested, he shared a $550 monthly rent payment with his girlfriend, so he was paying about $275 a month. His girlfriend also provided transportation. Bynum listed his estimated monthly basic living expenses: $100 for electricity, $30 for water, $100 for groceries, and $50 for a phone. Bynum stated that he was unsure of any other utility expenses because his girlfriend paid those as he could not afford them.

Bynum described his other financial obligations. He claimed to make payments towards his $1,100 in traffic fines. He estimated his medical bills to exceed $20,000 for his surgeries. He stated he takes prescription medication but did not know the exact cost. Bynum told the court that his girlfriend paid his $250,000 bond to get him out of jail after he was arrested in this case. He claimed that there was still a balance on the bond but was not aware how much his girlfriend initially paid. He also owed approximately $700 in probation fees to the City of Wichita from a 2019 case, which took him two to three years to pay.

On cross-examination, Bynum confirmed that he had never held a job as an adult even before his surgeries. Bynum stated that when he was not incarcerated, he was able to cover approximately $800 in monthly expenses with his girlfriend's help, excluding any child support obligations. He described her as the breadwinner. She had a full-time job. He stated he was in arrears on his child support since he had been in jail, but he did not know how much.

As to his physical limitations, Bynum clarified that only his left arm was affected, not his right. He explained that a tendon from his left leg was moved to his left arm, which causes his leg to cramp when walking. He explained that he did not want to work at a fast-food restaurant because that would not compensate for all of his bills. He added that he was interested in trade school so that he could get a better paying job.

The district court found that based on Bynum's testimony, he had not provided a credible explanation for the requested finding of unworkable restitution. Because there had been no social security disability finding, Bynum was not disabled at the time. The district court added that it is unclear why employment was not possible and that Bynum did not want to work or be employed on a regular basis. The district court acknowledged there was no confirmation of a child support order but still gave him the benefit of the doubt.

The district court also concluded that Bynum likely had no obligations because he heavily relied on his girlfriend. Also, that Bynum had no regular employment history for over 20 years and did not provide sufficient explanation for why he had never had a job with a paycheck even before his surgery on his arm. The district court determined that adding another arrearage would not meaningfully affect Bynum as he was not paying on his existing obligations.

The district court noted that based on his inconsistent statements, Bynum's testimony was not credible in regard to his inability to work. The district court concluded that, despite claiming a disability, Bynum could have worked based on his own testimony and history of physical and informal work and that his lack of employment stemmed from unwillingness rather than inability. The district court also explained that based on Bynum's jail credit, he would likely only remain in prison for approximately six more weeks, and upon his release he could then resume employment. The court ruled that the restitution amount was workable. The district court sentenced Bynum to 32 months in prison and ordered him to pay restitution in the full amount without setting explicit payment terms.

Bynum timely appeals the denial of his claim that restitution is unworkable.

ANALYSIS

*Restitution is the rule, and we evaluate the workability of a restitution plan on a case-by-case basis.*

The court is required to order a defendant to pay restitution unless it finds "compelling circumstances that would render restitution unworkable, either in whole or in part." K.S.A. 21-6604(b)(1)(B). In other words, restitution is the rule and finding that restitution is unworkable is the exception. *State v. Meeks*, 307 Kan. 813, 816-17, 415 P.3d 400 (2018). The burden is on the defendant—in this case, Bynum—to present evidence of compelling circumstances to prove that the restitution plan is unworkable. See *State v. Tucker*, 311 Kan. 565, 568, 465 P.3d 173 (2020). When a defendant fails to present evidence before the district court regarding his or her ability to pay restitution, the defendant does not meet this burden, and the district court's order of restitution will not be set aside on appeal. *State v. King*, 288 Kan. 333, Syl. ¶ 13, 204 P.3d 585 (2009).

Because K.S.A. 21-6604(b)(1) does not define "unworkable," courts are left to evaluate the unworkability of a restitution plan on a case-by-case basis. See *Meeks*, 307 Kan. at 820. That said, our Supreme Court in *Meeks* provided the following framework:

> "District courts should use this flexible guideline to evaluate each defendant's unique circumstances before deciding whether the defendant has shown a plan would be unworkable. Some of the factors relevant to the court's inquiry will be the defendant's income, present and future earning capacity, living expenses, debts and financial obligations, and dependents. In some circumstances, the amount of time it will take a defendant to pay off a restitution order will also be relevant, especially if the defendant is subject to probation until the restitution is paid in full. In all circumstances, the district court should keep in mind the ultimate goals of restitution: compensation to the victim and deterrence and rehabilitation of the guilty." 307 Kan. at 820.

6

This court reviews the district court's decision related to the workability of a plan of restitution for an abuse of discretion. *Meeks*, 307 Kan. at 816. Judicial discretion is abused if no reasonable person would agree with the decision or if the decision is based on an error of law or fact. To the extent that this question requires statutory interpretation, this court's review is de novo. 307 Kan. at 816. Bynum does not assert that the court made any errors of fact or law. Instead, he argues that no reasonable person would agree with the court's decision.

*The district court did not abuse its discretion by finding Bynum's restitution workable.*

Bynum argues that the district court's imposition of the full restitution amount was unreasonable given Bynum was expected to have a low income upon release from incarceration or to be considered disabled; plus he had significant debt to pay toward his medical bills, child support, and fines. Bynum also argues that all these factors convinced the district court that the restitution would never be paid.

The State argues that Bynum has chosen to rely on the support of others and not work, which does not mean he should be immune from a restitution order based on his actions. So we next examine the evidence as it relates to the workability framework set out in *Meeks*.

    i.       Present and future earning capacity

Earning potential is the key factor in Bynum's argument. But the record does not support his argument that he is expected to have a low income or "to be considered disabled." In *Meeks*, the defendant had no income and multiple financial obligations, including debts and dependents. The defendant in *Meeks* also testified that he had been incarcerated "for 16 years of his life and had limited ability to work due to a back injury." 307 Kan. at 821. At the same time, the defendant told the district court that he had work

7

lined up after release and that he had the ability to work. The court found that the defendant "showed his immediate financial incapacity but did not provide evidence to show that he would be unable to pay restitution after his release from prison." 307 Kan. at 821. The defendant's own testimony was contrary to the claim that he would be unable to pay restitution after his release.

Here, Bynum showed his immediate financial incapacity as he had been incarcerated for over two years. Yet he failed to show that he will be unable to pay restitution upon release. His claim that he should be considered disabled is not supported by the record, as he presented no evidence demonstrating either he received disability or he was unable to work. Reapplying for social security after a prior denial does not prove disability; it could just as easily suggest the claim will be denied. Bynum relies on the possibility of disability to argue that he has limited earning potential. But Bynum did not maintain traditional employment even before his injury.

The record also shows he is not physically incapable of working; he performs odd jobs such as cleaning and installing flooring, and he testified that he could write and sit or stand for extended periods. As the State suggested, he is capable of basic employment, including the ability to "flip burgers." Bynum dismissed such work because, in his view, it would not cover his expenses. His stance implies that avoiding a traditional job is better than bringing in even a small amount of income. Choosing not to work because the job is not ideal is different than lacking the ability to work.

And like in *Meeks*, Bynum's own testimony undermines any claim of permanently limited earning capacity. He stated that he plans to attend trade school to obtain higher paying employment, provided the trade accommodates his arm. That anticipated increase in earning potential cuts against his argument that his low income is enduring or renders restitution unworkable. See 307 Kan. at 821-22.

8

Finally, Bynum argues that the district court repeatedly speculated that the restitution will never be paid. That speculation, however, stemmed from Bynum's unwillingness to work, not because of any lack of ability. The district court acknowledged Bynum's limited earning capacity and noted that he "will *avoid* paying on and will not ultimately face any financial consequences for this." (Emphasis added.) The district judge then observed that Bynum otherwise appears capable of full employment. By contrast, in *Tucker*, 311 Kan. at 568, the court relied on the district court's statement that restitution "'will never be paid'" to find that the defendant had met his burden, but that was because the defendant was serving a life sentence. Here, when read in context, the district court's comments suggest that Bynum is underemployed by choice and that repayment is unlikely due to his own actions—distinguishing his situation from one in which the defendant is genuinely unable to pay.

ii.      Debts and financial obligations

Bynum has ordinary living expenses and some debt from medical bills and fines, which are not unusual. He estimated his total obligations at roughly $21,110, but he was unsure of the exact amount and provided no documentation to verify it.

Bynum also had a child support obligation of $690 per month for three minor children, which will eventually end as the children reach adulthood, similar to his fourth child who no longer requires support. His fines, totaling $1,100, are also not excessive. While these obligations reduce his disposable income, they are not so extreme as to prevent repayment if he had sufficient earnings. See *Meeks*, 307 Kan. at 815 (defendant failed to show restitution plan was unworkable having $23,000 in student loans, $7,000 in hospital bills, and $14,000 in child support arrearages; ordered to pay $168 per month in child support).

9

### iii. Other factors

The remaining factors to consider are income, dependents, living expenses, and the time to pay off a restitution order. At the time of the hearing, Bynum was incarcerated and never suggested that he earned any income while in prison or received income from outside sources. Before his incarceration, Bynum reported earning about $600 a month when doing work for his aunt. He also made money when he "sold a little bit of weed." Bynum reported having three minor children, but he did not specify that they were dependent. Instead, he has a child support order for them. Based on his bills before incarceration, Bynum reported to have about $555 in monthly expenses, which he split with his girlfriend. Food costs were included in that estimation, yet he stated that he also relied on his girlfriend's food assistance benefit.

The district judge did not order that restitution should be paid in specified installments, nor did it order Bynum to begin payments while incarcerated. This shows restitution will not be collected until he is paroled or released. See *State v. Alderson*, 299 Kan. 148, 151, 322 P.3d 364 (2014) (restitution not due while prisoner incarcerated unless district court unambiguously declares contrary intent on the record). That said, at the time of the hearing, Bynum may have had only six weeks left to serve, at which point he could find employment and begin paying his restitution.

Finally, a district court "should keep in mind the ultimate goals of restitution: compensation to the victim and deterrence and rehabilitation of the guilty." *Meeks*, 307 Kan. at 820. Here, the restitution owed is from the charges that were dismissed as a part of his plea agreement. His motion to withdraw his plea appears to have been driven by his desire to avoid all financial responsibility. In essence, he seeks to keep the benefits of the deal he negotiated without honoring the terms of that agreement.

10

iv.    The overarching requirement that the court find compelling circumstances to justify a finding that restitution was unworkable

To put a finer point on the test, restitution is required unless the court finds *compelling circumstances* that would render it unworkable. K.S.A. 21-6604(b)(1)(B). While *Meeks* outlines relevant factors for assessing workability, the plain language of the statute ties the determination of unworkability specifically to the presence of *compelling* circumstances that make repayment unworkable.

Setting aside restitution may occur when a defendant shows there are *compelling* circumstances rendering it unworkable. See *State v. Herron*, 50 Kan. App. 2d 1058, 1064, 335 P.3d 1211 (2014). In *Herron*, the defendant made $680 a month at a fast food locale, leaving her with a surplus of $32 per week after covering basic expenses, excluding necessities such as soap, medicine, and socks. She contended that she had no resources to repay her restitution, rendering it unworkable. The Court of Appeals found that the district court abused its discretion by ruling that poverty alone is not a "compelling circumstance that should relieve a defendant of the obligation to pay restitution." 50 Kan. App. 2d at 1064. The court clarified that poverty alone is not *always* a compelling circumstance, but poverty alone could justify no restitution. 50 Kan. App. 2d at 1064.

The *Herron* court followed the reasoning in *State v. Schulze*, 267 Kan. 749, 752, 985 P.2d 1169 (1999), which held that poverty alone could justify no restitution. *Herron*, 50 Kan. App. 2d at 1063. In *Schulze*, the district court initially ordered restitution of about $14,000. At the time, the defendant earned $18,000 annually, worked two jobs, and supported his wife and three school-age children. His phone and propane had been disconnected for nonpayment, and he was behind on two car payments. The defendant made a few payments towards his restitution totaling $1,900, and the district court released the remaining obligation, subject to reconsideration if his income rose substantially before probation ended. The State appealed, challenging the district court's

11

order conditionally relieving the defendant from payment of restitution. Our Supreme Court affirmed the district court, finding that "compelling financial circumstances existed which necessitated relief from the sizable bill." *Schulze*, 267 Kan. at 752. The *Schulze* court clarified that the district court considered the defendant's evidence of his financial difficulties when it found the defendant's circumstances were exceptional and by implication found the plan to be unworkable. 267 Kan. at 753.

Here, although Bynum's income may be limited, there is no *compelling* circumstance causing that limitation. In both *Schulze* and *Herron*, the defendants worked and made good-faith efforts, yet their income was not enough to provide themselves with basic care. *Schulze*, 267 Kan. at 750-52; *Herron*, 50 Kan. App. 2d at 1060. Bynum does not make that argument. Unlike *Herron* and *Schulze*, Bynum's limitations are self-imposed, as he testified he is not physically unable to work but simply has employment preferences. And unlike *Herron*, Bynum has access to other resources, including support from his girlfriend, paid work from family, and tools from friends to earn income.

His argument is essentially that because he chooses not to work and has expenses, he should not have to pay restitution. His continued reliance on others, sporadic odd jobs, and even selling marijuana to generate income—while avoiding steady employment—are not compelling circumstances that render restitution unworkable.

CONCLUSION

Bynum failed to meet his burden to present evidence of compelling circumstances to prove the restitution is unworkable. By his own testimony, he highlighted that he has typical expenses and bills, he is not disabled, he is physically able to work, and he could even obtain better paying employment if he follows through on his trade school aspirations. This court cannot conclude that no reasonable person would agree with the

district court here. Under these circumstances, the district court did not abuse its discretion by imposing the order of restitution for the full amount.

Affirmed.